THE STATE OF OHIO, APPELLANT, *v.* MCFARLAND, APPELLEE.

(No. 44239—Decided June 17, 1982.)

Mr. *John B. Gibbons,* for appellant.
Mr. *Thomas Shaughnessy,* for appellee.

MARKUS, J. The state appeals from the trial court's order suppressing certain physical evidence in a prosecution for possession of narcotics. The state claims the narcotics found on defendant's person were obtained by the police during a search incident to a valid arrest after a justifiable temporary detention.[1] We agree, so we are obliged to reverse.

Defendant was stopped and detained by a police officer who admittedly lacked probable cause at that time to believe defendant had committed a crime. Defendant was placed inside a police car while

---

[1] The state has assigned the following as error:

"The trial court erred in granting defendant-appellee's motion to suppress physical evidence where the evidence disclosed that the police officer, relying on specific and articulable facts, did make an investigatory stop to determine the subject's identity and to maintain the *status quo* temporarily. And the subsequent discovery of a controlled substance during a search made incident to a lawful arrest was proper."

the officer radioed headquarters to determine whether any warrant was outstanding for defendant's arrest. When the officer learned there was such an outstanding warrant, he arrested defendant and transported him to a nearby police station. At the station, defendant was booked and searched. Narcotics were found on defendant's person in his underwear.

The state contends defendant was originally detained for an investigatory stop because the officer had reasonable suspicion based upon specific and articulable facts that defendant was engaged in criminal activity. Defendant argues that the original stop and detention constituted an unlawful arrest without probable cause. Accordingly, defendant contends that the later search was the fruit of his unlawful arrest, despite the intervening probable cause for his arrest on an outstanding warrant.

I

Not all encounters between the police and citizens constitute seizures. *Reid* v. *Georgia* (1980), 448 U.S. 438; *United States* v. *Mendenhall* (1980), 446 U.S. 544; *Terry* v. *Ohio* (1968), 392 U.S. 1. However, whenever a person's freedom of movement is curtailed by police with force or a show of authority, that person is seized for purposes of a Fourth Amendment analysis. *Dunaway* v. *New York* (1979), 442 U.S. 200; *Terry* v. *Ohio, supra*. Thus, the Fourth Amendment requires that any such seizure of a person be reasonable,[2] regardless of whether it constitutes or leads to a formal arrest.[3] *Reid* v. *Georgia, supra*; *United States* v. *Brignoni-Ponce* (1975), 422 U.S. 873; *Terry* v. *Ohio, supra*.

Where the intrusion into a person's freedom is slight, it may be justified under the Fourth Amendment by a strong public interest such as prevention of crime, preservation of evidence from destruction, or safety of police officers. Where there is a minimal intrusion upon a person's liberty, it may be justified by a police officer's reasonable suspicion that the person is engaged in criminal activity if the officer can specifically articulate reasons underlying his suspicion. Thus, these "seizures" of a person where the intrusion upon liberty is minimal may be justified by something less than probable cause. *United States* v. *Brignoni-Ponce, supra*; *Adams* v. *Williams* (1972), 407 U.S. 143; *Terry* v. *Ohio, supra*; *Pennsylvania* v. *Mimms* (1977), 434 U.S. 106.

For example, in *Brignoni-Ponce,* the court held that a brief investigative stop of passengers in a vehicle near the border by a roving border patrol was justified by the importance of controlling entry of illegal aliens and the absence of practical alternatives. The court ruled the Fourth Amendment would allow that temporary detention to permit inquiry about citizenship, immigration status, or the passenger's suspicious behavior, even though the officer lacked probable cause to believe they had committed any crime.

---

[2] The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[3] The existence of a formal arrest is dependent upon four requisite elements:

"(1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State* v. *Barker* (1978), 53 Ohio St. 2d 135 [7 O.O.3d 213], paragraph one of the syllabus.

The time when an arrest occurs is ordinarily a factual question dependent on the peculiar circumstances of each case. *Sibron* v. *New York* (1968), 392 U.S. 40; see *Henry* v. *United States* (1959), 361 U.S. 98, at 103.

See, also, *United States* v. *Cortez* (1981), 449 U.S. 411.

The reasonableness of the temporary detention is determined by balancing the character of the official intrusion and its justification. *Michigan* v. *Summers* (1981), 452 U.S. 692, 699-702. In *Summers,* the court upheld the detention of a householder while his home was being searched pursuant to a valid warrant, and approved his subsequent arrest and search after narcotics were found in his home. In discussing the possible circumstances and purposes for a reasonable investigatory detention, the opinion by Justice Stevens for the six-member majority quoted with approval from 3 W. La Fave, Search and Seizure (1978), Section 9.2, at pages 36-37:

"It is clear that there are several investigative techniques which may be utilized effectively in the course of a *Terry*-type stop. The most common is interrogation, which may include both a request for identification and inquiry concerning the suspicious conduct of the person detained. *Sometimes the officer will communicate with others, either police or private citizens, in an effort, to verify the explanation tendered or to confirm the identification or determine whether a person of that identity is otherwise wanted.* Or, the suspect may be detained while it is determined if in fact an offense has occurred in the area, a process which might involve checking certain premises, locating and examining objects abandoned by the suspect, or talking with other people. If it is known that an offense has occurred in the area, the suspect may be viewed by witnesses to the crime. There is no reason to conclude that any investigative methods of the type just listed are inherently objectionable; they might cast doubt upon the reasonableness of the detention, however, if their use makes the period of detention unduly long or involves moving the suspect to another locale." (Emphasis added.) See *Michigan* v. *Summers, supra,* at 700-701, fn. 12.

Greater intrusions on an individual's liberty or privacy during a temporary investigatory detention require a stronger suspicion based on more significant articulable circumstances. Cf. *United States* v. *Jackson* (C.A. 2, 1981), 652 F.2d 244. Thus, events which justify a temporary detention at one location may not suffice to justify involuntary movement to another location. *United States* v. *Berry* (C.A. 5, 1982), 670 F.2d 583. Similarly, circumstances which justify a temporary detention for a few minutes may not suffice to justify detention for thirty to forty minutes, or rigorous detention for fifteen minutes without active investigative effort. *Sharpe* v. *United States* (C.A. 4, 1981), 660 F.2d 967 (*en banc*).

On the other hand, an otherwise justified investigatory stop and detention was not converted into an arrest by the fact that officers had guns drawn and directed a driver to exit his car at gunpoint. *United States* v. *White* (C.A.D.C., 1981), 648 F.2d 29. Further, reasonable and articulable grounds for suspicion of criminal activity may authorize detention to examine identification and thereafter to check for outstanding charges against the person identified. *State* v. *Freeman* (1980), 64 Ohio St. 2d 291 [18 O.O.3d 472]; *Michigan* v. *Summers,* quoted *supra.*

Therefore, we must examine the specific circumstances of the detention here to determine whether the extent of the police intrusion on defendant's liberty was justified by a sufficiently strong suspicion based on specific and articulable facts. If so, the temporary detention was lawful, and the subsequent arrest based on reasonable cause ascertained during the detention was valid. In that event, a detailed body search was authorized at the police station after the arrest, as a search incident to an arrest and an inventory search incident to incarceration. *United States* v. *Robinson* (1973), 414 U.S. 218; *United States* v. *Edwards* (1974), 415 U.S. 800.

## II

In this case, a police officer on routine patrol observed a group of six or seven males on the street in a high crime area with a reportedly high frequency of drug sales. They were openly passing money among themselves. When the officer approached in his police vehicle, the group scattered leaving defendant behind. The officer observed defendant turn and apparently place something inside the crotch of his trousers. He then observed defendant walk away with his hand supporting his crotch area, and change directions several different times while the officer followed in his vehicle. The police officer had twelve years of police experience and had made between 1,500 and 2,000 arrests during his police career.

At this time the officer clearly had a reasonable suspicion based upon articulable facts sufficient to justify an investigatory stop. After requesting and obtaining identification from defendant, the officer asked him to get into the back seat of the police car. The officer testified he recognized defendant's unusual first name as being possibly connected with a prior investigation by other officers of suspected drug dealers. He further testified that he would have chased defendant if defendant had attempted to run at this point.

Once defendant was in the back seat of the police car, he was directed to place his hands through an opening in the divider screen between the vehicle's front and back seats. With defendant in this position, the officer could safely observe him from the vehicle's front seat while he used his radio to make a warrant check for the person named in the identification supplied by defendant. The officer testified that he wished to keep defendant in that position for his own protection, to prevent others from interfering with his investigation, and to prevent defendant from discarding or destroying evidence. Defendant could not have escaped from the vehicle, since there were no inside door or window opening devices in the back seat.

The radio warrant check produced information that defendant was wanted on an outstanding warrant. Up to that moment, the officer had not searched defendant and had not even conducted a "pat down" search. He then arrested defendant, asked him to get out of the car, patted him down, and then placed him back in the police car with his hands again through the screen. The officer transported defendant to the police station in that position, for the same reasons he caused him to take that position during the radio check. Once at the station, defendant was searched and a bag containing narcotics was found upon his person in his underwear shorts. The total time from the moment defendant was first stopped by the officer to their arrival at the police station did not exceed ten to fifteen minutes.

Although this defendant's detention was significantly restrictive and was more than momentary, we find that it was reasonable and lawful under the strongly suggestive circumstances that gave rise to the detaining officer's suspicion of criminal activity. The exigencies of reasonable investigatory efforts sufficiently justified the limitations on defendant's freedom for a reasonable investigatory purpose that was not unduly prolonged.

Therefore we conclude that the motion to suppress evidence seized in the ultimate search at the police station should not have been granted.

The case is reversed and remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

PARRINO, P.J., and CELEBREZZE, J., concur.