DECISION.
Thomas Castro was charged with driving under the influence of alcohol and/or drugs in violation of R.C.4511.19(A)(1) and (A)(3). Castro moved to suppress evidence on the ground that his initial detention and arrest were not supported by reasonable suspicion or probable cause. The trial court denied the motion, concluding that the officers had probable cause to arrest Castro. Castro then entered a plea of no contest to, and was convicted of, the violation of R.C. 4511.19(A)(3).
On appeal, Castro contends that the trial court erred in denying his motion to suppress because (1) "the arrest for drug-related activity was illegal," and (2) "the arrest for driving under the influence of alcohol was a fruit of the illegal arrest for drug-related activity." We disagree and affirm the judgment of the trial court.
The relevant facts adduced at the suppression hearing are as follows. On July 2, 1998, at approximately 5:15 a.m., Cincinnati Police Officer Thomas Haas saw a white van operated by Castro pull up to the corner of Carll and Beekman Streets, where a man and woman were standing. Officer Haas recognized the woman and knew she had outstanding warrants. As Officer Haas drove up to arrest the woman, Castro drove off and the male pedestrian walked away.
A few minutes later, Officer Haas saw Castro's van return to the area. Officer Haas stopped Castro and asked him if he was lost or needed directions. When Castro responded that he was looking for the Days Inn, Officer Haas gave him specific directions to the inn, which was approximately two miles away. Officer Haas told Castro that the area was a bad one for Castro to be in because of high drug activity and crime. Castro drove off a second time, and Officer Haas continued speaking with the arrested woman.
Within minutes, Officer Haas saw Castro's van again as it turned onto a side street and followed the male pedestrian, who was walking on the street. As Castro stopped his van five to six feet from the curb, the male pedestrian turned, looked at the van, and then started to walk back toward it. Officer Haas called for assistance, suspecting drug activity. As Officer Haas then pulled to the rear of Castro's parked van, the pedestrian backed away.
As other officers arrived, one of them stood by the driver's door of Castro's van while Officer Haas confronted the pedestrian. Ultimately, Officer Haas found drugs on the pedestrian and arrested him. Then Officer Haas approached Castro, who remained seated in his van.
Officer Haas detected an odor of alcohol about Castro's person. Officer Haas testified that "[a]t that time [he] was concerned with two other arrests" and asked Castro to step from the van. Officer Haas noticed that Castro's eyes were watery and bloodshot, and that he had a slight slur to his speech. Then Officer Haas asked Officer George Miller "if he would further the investigation for a possible driving under the influence of alcohol."
Officer Miller testified that when he arrived at approximately 5:35 a.m., Castro was already seated, uncuffed, in the back of a police cruiser. While the record does not demonstrate the exact time of Castro's placement in the back of the cruiser, it is clear that it was only a matter of minutes before Officer Miller arrived and conducted field sobriety tests. After Castro failed the field sobriety tests, Officer Miller handcuffed Castro and placed him in his police cruiser.
Castro claims that he was arrested at the point when he was placed in the first police cruiser. But simply because Castro was temporarily detained by police before field sobriety tests were conducted did not mean that he was under arrest.
While probable cause must exist for the police to arrest an individual, there are other types of police detention that may be based on less than probable cause.[1] Even complete deprivations of a suspect's liberty do not convert a Terry stop into an arrest if the methods of restraint are reasonable under the circumstances.[2] These temporary detentions are justified so long as police have a reasonable, articulable basis for suspecting criminal activity.[3]
In this case, the Terry stop of Castro by police was justified by Officer Haas's suspicion that Castro was engaged in drug activity. While Castro's conduct prior to the stop may not itself have been criminal, under the circumstances, it did give rise to a reasonable suspicion. As we recently stated in State v. Jones,[4]
"it is a common misperception that, in order to effectuate a Terry
stop, the police must actually observe the person engaging in criminal activity."
During the initial detention of Castro for suspicion of drug activity, Officer Haas ascertained reasonably articulable facts giving rise to his suspicion that Castro had been operating his van under the influence of alcohol, thereby allowing Officer Haas to further detain Castro and implement a more in-depth investigation.[5] Officer Haas had seen Castro driving the van and, upon his contact with Castro, noticed an odor of alcohol, as well as slurred speech and bloodshot and watery eyes. Consequently, the temporary detention of Castro at that time to have him take field sobriety tests did not violate his rights under the Fourth Amendment.[6]
In assessing whether the detention was too long to be justified as an investigative stop, we must examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain Castro.[7] In doing so, we must keep in mind that the police were acting in a swiftly developing situation, and we should not indulge in unrealistic second-guessing.[8] In this case, Officer Miller arrived within minutes of Castro's detention and removed him from the police cruiser to conduct field sobriety tests. Clearly, where the police were dealing with the arrests of two other people in the early hours of the morning in a high-drug, high-crime area, their action in briefly detaining Castro before field tests could be conducted was reasonable. Therefore, because we hold that Castro was not under arrest at the time he was placed in the first police cruiser, Castro's first assignment of error is overruled.
Castro's second assignment of error contends that his arrest for driving under the influence "was a fruit of the illegal arrest for drug-related activity." We disagree. As we stated earlier, the brief detention of Castro prior to the field sobriety tests did not constitute an arrest.
Moreover, at the time Officer Miller placed Castro under arrest, he had probable cause to believe that Castro had been operating his van while under the influence of alcohol. After Officer Miller noticed Castro's bloodshot eyes and a moderate to strong odor of alcohol, he had Castro perform field sobriety tests, which Castro failed. Under the totality of the circumstances, Officer Miller possessed sufficient facts to warrant a prudent individual in believing that Castro had been operating his van under the influence of alcohol.[9] We overrule Castro's second assignment of error.
Therefore, the judgment of the trial court is af-firmed.
Judgment affirmed.
 Gorman, P.J., Painter and Winkler, JJ.
[1] Terry v. Ohio (1968), 392 U.S. 1, 20-21, 88 S.Ct. 1868,1879-1880.
[2] State v. Boykins (Oct. 29, 1999), Hamilton App. No. C-990101, unreported, citing United States v. Crittendon (C.A.4, 1989),883 F.2d 326, 329.
[3] Michigan v. Summers (1981), 452 U.S. 692, 700, 101 S.Ct. 2587,2593 (detention of occupant during execution of search warrant reasonable where warrant implicitly carried authority to detain during search); United States v. Brignoni-Ponce (1975),422 U.S. 873, 882-884, 95 S.Ct. 2574, 2581-2582 (stop of vehicle reasonable where border-patrol agents had reasonable suspicion that vehicle contained illegal aliens); see, also, State v. McFarland (1982),4 Ohio App.3d 158, 446 N.E.2d 1168 (detention in locked police car for less than ten minutes to accomplish radio check for outstanding warrants reasonable where officer had reasonable suspicion of criminal activity).
[4] (Dec. 3, 1999), Hamilton App. No. C-990125, unreported.
[5] See State v. Robinette (1997), 80 Ohio St.3d 234, 241,685 N.E.2d 762, 768.
[6] See State v. Boys (1998), 128 Ohio App.3d 640, 643,716 N.E.2d 273, 275.
[7] United States v. Sharpe (1985), 470 U.S. 675, 686,105 S.Ct. 1568, 1575.
[8] Id.
[9] Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225; Statev. Heston (1972), 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376, 379.