JOURNAL ENTRY AND OPINION
The appellant, Margaret J. Benning, appeals the decision of the Rocky River Municipal court in denying her motion to suppress evidence and in failing to properly impose sentence. For the reasons set forth below, we affirm the decision of the trial court.
In the early morning hours of November 27, 2000, Benning left her apartment, located at the intersection of Great Northern Boulevard and Lorain Road in the City of North Olmsted, to purchase cigarettes at the gas station directly across Lorain Road. At the same time, Patrolman Jack Butcher was on duty and patrolling the area of Great Northern Boulevard and Lorain Road. While on patrol, the officer heard the loud exhaust of Benning's vehicle as she exited the gas station and pulled out onto Lorain Road. Patrolman Butcher followed her as she proceeded to turn from Lorain Road into the entrance of her apartment complex. At this point, he pulled her over for a possible defective exhaust or an improper muffler system.
He then approached her vehicle and advised her that the reason he had stopped her was due to a bad exhaust. Benning acknowledged the problem and informed the officer that it was her boyfriend's car and that the new exhaust parts were in the back of the vehicle. Officer Butcher asked Benning for her driver's license. The license she produced stated that she was required to drive with an interlock device, which would require her to blow into the device to ensure that she was not under the influence of alcohol before the vehicle could be started. Benning informed the officer that the car was not hers, but belonged to her boyfriend, and that she had borrowed it because her car did not have any gas. Officer Butcher testified that while speaking with Benning, he detected the smell of alcohol in the car and that Benning's eyes appeared to be glassy and bloodshot and her speech pattern appeared to be slurred.
Officer Butcher returned to his squad car to determine the severity of Benning's driving limitations and to call for an additional unit to assist him. Once the additional officer arrived, Benning was asked to exit her vehicle, she was patted down by the second officer and placed in the back of Officer Butcher's car. While in Officer Butcher's car, she was questioned further about possible driving under suspension violations.
After investigating Benning's driving record, the officers instructed her to exit the police car. At this point, according to Officer Butcher's testimony, several field sobriety tests were initiated. At the conclusion of the tests, Benning was arrested for driving under the influence, she was read her rights and transported to the police station to submit to a blood alcohol test on which she scored a .157.
The appellant was cited for: (1) operating a motor vehicle under the influence of alcohol, pursuant to R.C. 4511.19(A)(1); (2) operating a motor vehicle with a breath alcohol concentration of .157, pursuant to R.C. 4511.19(A)(3); (3) driving under suspension, pursuant to R.C.4507.02(D)(2);(4) muffler violation, pursuant to 337.20; and (5) non-functional rear license plate, pursuant to 337.04.
The appellant filed a motion to suppress with the trial court, a hearing was held on the matter and the motion was denied. The appellant then entered a plea of no contest to all counts and was sentenced.
The appellant now appeals the decisions of the trial court and asserts the following assignments of error:
 I. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE STOP OF THE VEHICLE DRIVEN BY APPELLANT WAS UNLAWFUL AND A VIOLATION OF APPELLANT'S FOURTH AMENDMENT RIGHTS.
 II. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE STEMMING FROM THE STOP BECAUSE THE STATE FAILED TO PUT FORTH EVIDENCE THAT ITS OFFICER STOPPED APPELLANT IN THE CITY OF NORTH OLMSTED OR THAT THE OFFICER WAS UNDER REASON TO BELIEVE THAT APPELLANT COMMITTED ANY CRIME IN THE CITY OF NORTH OLMSTED.
 III. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS THE ARREST ON THE BASIS THAT THE ARRESTING OFFICER FAILED TO HAVE SUFFICIENT PROBABLE CAUSE TO ARREST APPELLANT FOR OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE.
 IV. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS ANY STATEMENTS MADE BY APPELLANT AND THE FIELD SOBRIETY TESTS BECAUSE APPELLANT WAS ALREADY UNDER CUSTODIAL ARREST WHEN THE STATEMENTS WERE MADE AND WHEN THE TESTS WERE GIVEN.
 V. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO ALLIED OFFENSES OF SIMILAR IMPORT AND NOT REQUIRING APPELLEE TO CHOOSE ONE OF THE OFFENSES OVER APPELLANT'S OBJECTION.
 VI. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN APPELLANT'S APPEAL OF THE ADMINISTRATIVE LICENSE SUSPENSION AGAINST HER UNDER R.C. 4511.191.
The scope of our review in a motion to suppress was set forth by this court in State v. Curry (1994), 95 Ohio App.3d 93, 96:
 In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250, 63 Ohio Op.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908.
In her first assignment of error, the appellant maintains that the police officer failed to show that he possessed a reasonable and articulable belief that she was driving a vehicle with a muffler cut-out, by-pass or similar device, as set forth in North Olmsted Traffic Code Section 337.20(a)
Section 337.20(a) of the traffic code states:
 Every motor vehicle and motorcycle with an internal combustion engine shall at all times be equipped with a muffler which is in good working order and in constant operation to prevent excessive or unusual noise, and no person shall use a muffler cutout, by-pass or similar device upon a motor vehicle on a highway. Every motorcycle muffler shall be equipped with baffle plates.
The appellant's argument that the loud sound of an exhaust is not a sure sign of an illegal muffler cut-out, by-pass, or similar device and therefore not sufficient to pull over the appellant's vehicle is misplaced.
In order for a law enforcement officer to make a valid and constitutional traffic stop of an automobile, the officer must be able to show a reasonable suspicion that a traffic law is being violated.Delaware v. Prouse (1979), 440 U.S. 648, 663. The officer's burden does not reach to that of probable cause for an arrest, but only specific and articulable facts which would warrant further investigation. State v.Bobo (1988), 37 Ohio St.3d 177.
In this case, the appellant was pulled over due to the excessive noise coming from her muffler. In a prior case dealing with this same issue and code section, this court determined that "excessive or unusual noise from a muffler is prohibited by the statute, thus, observation of a loud muffler provides a reasonable suspicion to warrant the stop of an automobile." City of Brecksville v. Linn (June 11, 1998), Cuyahoga App. No. 72808, unreported, 1998 Ohio App. LEXIS 2602, at 7, citing State v.Van Scoder (1994), 92 Ohio App.3d 853. Therefore, the trial court did not err in denying the appellant's motion to suppress as it extended to her initial traffic stop.
Appellant's second assignment of error contends that the prosecution failed to establish that the incident in question occurred within the jurisdiction of North Olmsted and that the appellant was pulled over within the City of North Olmsted. Appellant argues, therefore, that her motion to suppress should be granted.
Evid.R. 201(B) identifies those facts that may properly be the subject of judicial notice:
 A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
This court established in City of Lyndhurst v. Sadowski (September 2, 1999), Cuyahoga App. No. 74313, unreported, 1999 Ohio App. LEXIS 4079 that "geographical facts are often accurately and readily determinable facts such that a court may properly take judicial notice of them pursuant to Evid.R. 201(B)." The facts in Sadowski are somewhat distinguishable from the case at bar. In Sadowski, this court found that the trial court abused its discretion in taking judicial notice of the location of the arrest when the officer testified that the appellant was outside of his jurisdiction. But in the case sub judice, Officer Butcher testified he was on routine patrol in North Olmsted at the intersection of Great Northern Boulevard and Lorain Road, which is where the incident took place and where the appellant was pulled over.
The Magistrate stated: "I am going to overrule the motion. The location of the stop and arrest were covered. At this point, I will overrule that motion." The trial court appropriately took judicial notice of the location of the incident, the location where the appellant was pulled over, and the fact that the officer involved was a North Olmsted police officer who stated that he was patrolling his jurisdiction at the time. Therefore, appellant's second assignment of error is without merit.
Appellant's third and fourth assignments of error will be addressed together as they argue points that are interrelated. In her third assignment of error, appellant contends that the arresting officer lacked the proper indicia of intoxication to warrant her arrest for driving under the influence and that the failed sobriety tests were not conducted properly. In her fourth assignment of error, the appellant contends that the field sobriety tests conducted and the statements made in the officer's squad car were done after the appellant was under custodial arrest without being advised of her rights under Miranda v. Arizona
(1966), 384 U.S. 436.
The sequence of our review for these two assignments of error must be to (1) determine the nature of the appellant's placement into the back of the arresting officer's squad car; (2) discuss the effect of the pat-down search conducted before the appellant was placed in the squad car; and (3) the lack of Miranda warnings before the appellant performed the field sobriety tests and the requisite probable cause to arrest.
The Ohio Supreme Court has determined an arrest is characterized by the following elements:
 (1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. State v. Darrah (1980), 64 Ohio St.2d 22, 26.
Numerous Ohio courts, in applying these similar characteristics, have concluded that "the actions of a police officer in asking a person to sit in the police car do not automatically transform an investigative detention into a formal arrest. State v. Broomfield (Sept. 13, 1996), Clark App. No. 95-CA-0103, unreported, 1996 Ohio App. LEXIS 3134, citingState v. McFarland (1982), 4 Ohio App.3d 158, 446 N.E.2d 1168. It has also been held that far more intrusive conduct by police officers, such as handcuffing in the course of an investigative detention, does not necessarily make that detention an arrest as long as the handcuffing is reasonable under the circumstances. State v. Mays (1995),104 Ohio App.3d 241, 248-249, 661 N.E.2d 791; Broomfield, supra; UnitedStates v. Miller (C.A.8, 1992, 974 F.2d 953, 956-957; United States v.Glenn (C.A.7, 1989), 878 F.2d 967; United States v. Crittendon (C.A.4, 1989), 883 F.2d 326; United States v. Laing (C.A.D.C. 1989), 281 U.S. App. D.C. 266, 889 F.2d 821. * * * Whether handcuffing or other means of detention are reasonable `depends on whether the restraint was temporary and lasted no longer than was necessary to effectuate the purpose of the stop, and whether the methods employed were the least intrusive means reasonably available to verify the officer's suspicions in a short period of time.' Glenn, 878 F.2d at 972." State v. Pickett (August 3, 2000), Cuyahoga App. No. 76295, unreported, 2000 Ohio App. LEXIS 3484, at 13.
In reviewing the specific circumstances of the appellant's detention, we must conclude that the detention of the appellant did not exceed the bounds of a lawful investigative detention. "A police officer may lawfully detain a person for a reasonable temporary investigatory purpose if the officer's reasonable suspicion of criminal activity based on specific articulable facts outweighs the resulting intrusion on the person's liberty and privacy." State v. McFarland (1982), 4 Ohio App.3d 158, paragraph one of the syllabus. In the instant case, the officer's purpose for placing the appellant in the cruiser was to talk with her further regarding the status of her driving record and privileges or restrictions while he waited for information from the Bureau of Motor Vehicles to appear on the screen of his laptop computer. The record did not suggest any intent to arrest the appellant at that point in time. In fact, although the officer knew that the appellant had a suspended driver's license, he still planned on conducting several field sobriety tests after receiving further information from dispatch.
Accordingly, we find the degree of detention in this case does not rise to the level of an arrest, but merely a minor detention for a reasonable temporary investigatory purpose.
The next issue for review is the officer conducting a pat-down search of the appellant before placing her in the squad car. In order to conduct a pat-down search for weapons, an officer must have a "specific and articulable" belief based on the "reasonably prudent man" standard that an individual is armed and dangerous. Terry v. Ohio (1968), 392 U.S. 1,21, 27. To allow a pat-down search for anything less would "invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than [an] inarticulate [hunch], a result that this court has consistently refused to sanction." Id. at 22.
However, the United States Supreme Court has also recognized that the safety of police officers is "legitimate and weighty." Pennsylvania v.Mimms (1977), 434 U.S. 106, 110. In Mimms, the court validated a pat-down search by police officers of a potentially armed and dangerous driver even absent a belief that the driver was armed and dangerous. InLozada, the Ohio Supreme Court further determined that "keeping officers safe from a dangerous condition is also legitimate and weighty. * * * [T]hus, it is reasonable to place the driver in a patrol car and subject him or her to a pat-down search for weapons where placement of the driver in the patrol car is justified to protect the officer or the driver froma dangerous condition." Lozada at 79. (Emphasis added.)
In reviewing this case, we must conclude that the appellant was placed in the arresting officer's squad car, after a pat-down search, for officer safety and in order to avoid a dangerous condition. In this case, the officer testified that as soon as he spoke with the appellant, he could distinctly smell alcohol coming from her vehicle. Additionally, the appellant appeared intoxicated, she had slurred speech, and her eyes appeared glassy and bloodshot. The officer further testified that while he made no determination that the appellant could be armed and dangerous, he did possess fears that the appellant might drive off. In this case, the potential for injury from a person driving, whom an officer suspects of being intoxicated, constitutes a dangerous condition, both for the officer, the driver and the community. Therefore, the officer was justified in patting down the appellant and placing her in the squad car to prevent a suspected intoxicated person from driving away.
The appellant further argues that the officer did not possess the requisite probable cause to arrest her for driving under the influence and that the officer failed to read the appellant her rights before conducting the field sobriety tests.
As this court has already determined in State v. Peliz (November 5, 1998), Cuyahoga App. No. 73654, unreported, 1998 Ohio App. LEXIS 5313, at 6:
 We observe that in Piqua v. Hinger (1968), 15 Ohio St.2d 110, 238 N.E.2d 766, the Supreme Court addressed this precise question and stated in its syllabus:
 1. Physical tests, whereby a person accused of operating a motor vehicle while under the influence of intoxicating liquor is required to write his name and address, to pick up coins placed on the floor, to close his eyes and touch his hand to his nose, and to submit to a breathalyzer test, and motion picture film made thereof, are real or physical evidence and not such communication or testimony of the accused as is protected by the constitutional privilege against self-incrimination.
 2. Testimony regarding such tests, and the film thereof, are not subject to exclusion by reason of the failure to advise the accused of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, and are admissible in evidence irrespective of whether such advice is given. (Schmerber v. California, 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826.)
Therefore, the trial court did not err in denying the motion to suppress because the officer failed to read the appellant her Miranda rights prior to administering the field sobriety tests. The appellant was not in custody, and the field sobriety tests do not warrant the constitutional protections of Miranda rights.
Lastly, the appellant argues that the officer lacked the probable cause necessary to arrest her for driving under the influence of alcohol. She maintains that the officer failed to strictly comply with the guidelines for testing as formed by the National Highway Traffic Safety Administration (NHTSA); therefore, the results cannot be used to find probable cause.
Recently, the Ohio Supreme Court found in State v. Homan (2000),89 Ohio St.3d 421:
 [W]e conclude that in order for the results of field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures. Id. at 424.
According to the Court in Homan, when reviewing the testing procedures of a police officer, they must have strictly followed the established guidelines. "If any one of the standardized field sobriety tests elements is changed, the validity is compromised." National Highway Traffic Safety Adm., U.S. Dept. of Transp., HS 178 R2/00, DWI Detection and Standardized Field Sobriety Testing, Student Manual (2000), at VIII-3.
In this case, the results of the Horizontal Gaze Nystagmus (HGN) test were suppressed by the trial court because the officer deviated from the NHTSA standards for the test's administration; therefore, our review focuses on the remaining two tests performed: (1) the walk-and-turn test and (2) the one-leg-stand test. Absent strict compliance with the guidelines, these tests will not be admissible in court to help establish probable cause.
Upon a review of the transcript of the video tape of the appellant's Field Sobriety Tests, we must conclude that the officer failed to strictly comply with the established guidelines. In the walk-and-turn test, when the officer was giving instructions to the appellant, he failed to properly describe the pivot made after completing nine heel-to-toe steps. The pivot explained in the guideline is accomplished by keeping the front foot on the line and turning by taking a series of small steps with the other foot. The video displayed a quick turn by the police officer with no elaboration on the "series of small steps." In addition, according to the guidelines, the suspect was to watch her feet for the entire time that the walk-and-turn test was being performed. However, the officer involved failed to inform the appellant to do this. Therefore, in the absence of strict compliance, the results of the walk-and-turn test cannot be used to determine probable cause.
The remaining sobriety test completed by the appellant must also be stricken as it fails to comply with the strict guidelines set forth by the NHTSA. The guidelines set forth that the suspect must raise her foot and watch the raised foot the entire time. However, at no point was the appellant informed by the officer to watch her foot while it remains raised for thirty (30) seconds. Therefore, the one-leg-stand test must also be suppressed as evidence of probable cause.
Our review of the determination of probable cause, however, is not limited to the results of the field sobriety tests. In Homan,
the court further stated:
 In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145; State v. Timson (1974), 38 Ohio St.2d 122, 127, 67 Ohio Op. 2d 140, 143, 311 N.E.2d 16, 20. In making this determination we will examine the "totality of facts and circumstances" surrounding the arrest. See State v. Miller (1997), 117 Ohio App.3d 750, 761, 691 N.E.2d 703, 710; State v. Brandenburg (1987), 41 Ohio App.3d 109, 111, 534 N.E.2d 906, 908.
The Homan court, after suppressing the field sobriety tests, looked at the observations of the officer when the suspect was initially pulled over. The officer testified that "he observed that appellee's eyes were `red and glassy' and that her breath smelled of alcohol. Appellee admitted to the arresting officer that she had been consuming alcoholic beverages." The court then concluded that, under the totality of the circumstances, there is ample evidence to support the trooper's decision to place the appellee under arrest. Id. at 427.
In the case sub judice, at 1:30 a.m., when the officer pulled over the appellant's vehicle, the first thing he noticed was the smell of alcohol coming from the car. He further testified that the appellant's speech pattern was slurred and that her eyes appeared glassy and blood-shot. After taking her license, he also realized that she was only permitted to drive a car with an interlock system. This system would make the appellant submit to a breathalyzer test before her car would start. She, however, was not driving her car, but her boyfriend's. When asked why she was not driving her own car, the appellant contradicted herself by stating at one time that her car was broken and then later stating that her car was out of gas. The appellant further stated to the officer that she had not been drinking, but later changed her story and admitted to having had one beer. Therefore, when viewed in light of the "totality of the circumstances," there was probable cause to charge the appellant with driving under the influence. Appellant's third and fourth assignments of error are without merit.
In appellant's fifth assignment of error, she contends that the trial court improperly convicted her on the charge of driving while under the influence and driving with a prohibited blood alcohol content.
The appellant was convicted under 4511.19(A)(1) and 4511.19(A)(3); however, during sentencing, the trial court correctly determined that the two charges are allied offenses of similar import, at which point the trial judge merged the two for purposes of sentencing. Subsection (C) of 4511.19 states that although a person may be charged with both driving under the influence and driving with a prohibited blood alcohol content, "he may not be convicted of" more than one of those violations. See Cityof Middleburg Heights v. Saunders (October, 12, 2000), Cuyahoga App. No. 77044, unreported, 2000 Ohio App. LEXIS 4753 at 10. However, "under Ohio law, a defendant may be charged with two allied offenses of similar import, found guilty of both charges, but may be convicted of only one."State v. Ryan (1984), 17 Ohio App.3d 150, 152; see Maumee v. Geiger
(1976), 45 Ohio St.2d 238.
In the case sub judice, while the appellant was found guilty of both the driving under the influence charge and the driving with a prohibited blood alcohol content charge, the two charges were merged for purposes of sentencing, and she was only sentenced on one charge; therefore, she was only convicted on one charge. Appellant's fifth assignment of error is without merit.
In appellant's sixth assignment of error, she contends that the trial court failed to sustain the imposition of her administrative license suspension because there were no reasonable grounds to believe she was under the influence or had a prohibited level of alcohol.
The officer's reference on the form cited by the appellant was to his original reason for stopping the appellant. This is not, however, an exhaustive list of the reasons for the appellant's arrest. Additionally, this court has already determined that the officer possessed the reasonable belief that the appellant was driving a vehicle while under the influence of alcohol. Appellant's sixth assignment of error is without merit.
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., CONCURS. PATRICIA A. BLACKMON, J., CONCURS INJUDGMENT ONLY.