OPINION.
{¶ 1} Defendant-appellant Haryl Dabney appeals his conviction in the Belmont County Common Pleas Court of possession of crack cocaine in excess of ten grams but less than 25 grams, a violation of R.C. 2925.11(A), (C)(4)(d), a second degree felony. Dabney was a passenger in a car that was validly stopped. After arresting the driver, Dabney was frisked, which produced no weapons, handcuffed, and placed in the police cruiser. Upon removing Dabney from the cruiser, 17.5 grams of crack cocaine was found on the seat of the cruiser. This court is asked to determine whether Dabney's Fourth Amendment rights were violated when he was handcuffed and placed in a police cruiser after the pat-down produced no weapons or reasons for arrest. If so, was the trial court required to suppress the crack cocaine as being a fruit of the poisonous tree. We answer both of these questions in the affirmative and therefore reverse the trial court's decision, vacate the conviction, and remand the case for further proceedings.
 STATEMENT OF FACTS {¶ 2} While on patrol in Martins Ferry, Ohio, police Officers Ghent and McFarland observed a white Cadillac enter the Convenient Food Mart store parking lot and almost cause a collision with another vehicle. (Tr. 56, 119). Due to the near accident, the officers wanted to stop the Cadillac, but because of the heavy traffic, the officers were unable to enter through the main entrance of the parking lot. Therefore, the officers circled the block and entered the parking lot through a side alley. (Tr. 56, 120). But by the time they arrived at the store parking lot, the Cadillac was gone. (Tr. 57, 120).
 {¶ 3} The officers continued to patrol for 20 minutes to a half-hour before they noticed that the Cadillac was parked at O'Riley's Bar. (Tr. 57, 121). While circling the block, the officers ran the vehicle's registration number and learned that the number was registered to a `92 Ford station wagon, not a Cadillac. (Tr. 58, 122). Upon returning to the location of the vehicle, they observed the Cadillac leaving the parking lot of the bar. Intending to stop the vehicle for improper registration, the officers pulled behind the Cadillac and activated the overhead lights. (Tr. 62, 124).
 {¶ 4} Once the Cadillac was stopped, Officer Ghent approached the passenger's side where Dabney was seated, while Officer McFarland approached the driver's side where Anthony Scott was seated. (Tr. 66, 130). Officer McFarland then asked Scott for his driver's license, registration, and proof of insurance. (Tr. 131). Scott produced a driver's license for Sherman Griffin and failed to produce the other requested documentation. (Tr. 131). Personally knowing who Sherman Griffin was and knowing that Scott was not Sherman Griffin, Officer McFarland asked Scott to exit the car and proceeded to arrest him for falsification and improper registration. (Tr. 132). Sometime during all of this, one of the officers called Bridgeport police for assistance. Scott was patted down, which produced roughly $4,000 and a bag of marijuana, handcuffed, and placed into the Bridgeport police cruiser. (Tr. 134-135).
 {¶ 5} While all of the above was occurring with Scott, Officer Ghent remained on the passenger's side of the Cadillac talking to Dabney. (Tr. 67). Dabney informed Officer Ghent who he was and that he owned the car, however Dabney could not produce a bill of sale. (Tr. 68).[1] Once Scott was secured, Officer Ghent asked Dabney to step out of the vehicle and proceeded to frisk and handcuff Dabney. (Tr. 69). During the pat down $1,395 in cash was found on Dabney. Officer Ghent then checked to ensure that the backseat of the Martins Ferry cruiser was clean and proceeded to place Dabney in the cruiser. (Tr. 69, 71). Dabney was informed that he was not under arrest, but because ownership of the car could not be confirmed, the car would be towed. (Tr. 69-72). The officer further informed Dabney that prior to towing the vehicle he would be allowed to take his personal belongings from the car after it had been searched for weapons. (Tr. 69-72). The officer found no weapons in the Cadillac. However, when Dabney was removed from the cruiser, a bag of 17.5 grams of crack cocaine was found on the seat of the Martins Ferry police cruiser where Dabney had been sitting. (Tr. 73-74). Dabney was then arrested for possession of crack cocaine.
 {¶ 6} An indictment was filed in the Belmont County Common Pleas Court charging Dabney with a violation of R.C. 2925.11(A), (C)(4)(d), possession of crack cocaine in excess of 10 grams but not more than 25 grams. During the pretrial stage, Dabney filed a motion to suppress alleging that the officers violated his Fourth and Fourteenth Amendment rights by frisking, handcuffing, and placing him in a cruiser without finding any illegal substance or weapons on his person and, as such, the crack cocaine that was found in the backseat of the cruiser where Dabney was sitting was a fruit of the poisonous tree and required suppression. The trial court denied the motion and the case proceeded to a two day jury trial in which Dabney was found guilty of the crime charged. Dabney timely appeals raising two assignments of error.
 ASSIGNMENT OF ERROR NO. ONE {¶ 7} "The trial court erred to the prejudice of appellant in denying appellant's motion to suppress evidence."
 {¶ 8} Dabney concedes for the sake of argument that the initial stop and frisk might pass constitutional muster, however, he contends that once the officer determined that neither he nor Scott were armed, any further detention and interference with his liberty rose to the level of an unreasonable seizure of his person in violation of his Fourth Amendment rights. In accordance with this view, he insists that the crack cocaine was a fruit of the poisonous tree and, therefore, should have been suppressed.
 {¶ 9} Our standard of review in an appeal of a suppression issue is two-fold. State v. Lloyd (1998), 126 Ohio App.3d 95. Since the trial court is in the best position to evaluate witness credibility, we must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Winand (1996), 116 Ohio App.3d 286,288, citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604, 608. However, once we have accepted those facts as true, we must independently determine as a matter of law whether the trial court met the applicable legal standard. State v. Clayton (1993), 85 Ohio App.3d 623, 627. This determination is a question of law which we cannot give deference to the trial court's conclusion. Lloyd, 126 Ohio App.3d 95.
 {¶ 10} During a valid investigatory stop, a police officer may conduct a pat down of the individual's outer clothing for weapons if the officer had a reasonable suspicion that the suspect is armed. Terry v.Ohio (1968), 392 U.S. 1. Whether the officer's belief is reasonable depends on the totality of the circumstances. State v. Freeman (1980),64 Ohio St.2d 291. Here, the frisk was reasonable given all the facts involved in this situation; Dabney claimed he owned the car but could not produce supporting documentation, he allowed Scott to drive the car without a valid driver's license, he did not inform the police of Scott's real name when he heard him give a fictitious name or when Scott was arrested, a near accident was caused by this car entering the store's parking lot, and the suspicious nature of this car immediately leaving the store parking lot after it had just entered the parking lot. Regardless, Dabney is conceding, at least for the sake of the argument, that the initial pat down is legal. Therefore, we must turn our attention to determine whether the fact that the pat down produced no weapons or reason for arrest, did the officer violate Dabney's Fourth Amendment rights by detaining Dabney in handcuffs in the backseat of the cruiser while a search was performed on the Cadillac.
 {¶ 11} The act of handcuffing and placing an individual in a cruiser is a show of authority that restrains the liberty of the individual and thus constitutes a seizure. State v. Haberman (June 2, 2000), 5th Dist. No. 99CA0068, citing Terry, 392 U.S. 1; State v.McFarland (1982), 4 Ohio App.3d 158, 159, citing Dunaway v. New York
(1979), 442 U.S. 200. However, in determining whether the seizure is in violation of the Fourth Amendment, we must look to "the reasonableness in all the circumstances of a particular governmental invasion of a citizen's personal security." State v. Lozada, 92 Ohio St.3d 74, 78,2001-Ohio-149. Detention of an individual by a law enforcement officer does not violate the Fourth Amendment if there are at the very least, specific and articulable facts indicating the detention was reasonable.State v. Gillenwater, 10th Dist. No. 02AP-292, 2003-Ohio-1651, citingState v. Chatton (1984), 11 Ohio St.3d 59, 61; Terry, 392 U.S. 1. Where the intrusion into a person's freedom is slight, the detention of the individual may be justified under the Fourth Amendment by a strong public interest such as prevention of crime, preservation of evidence, or safety of the police officer. McFarland, 4 Ohio App.3d 158.
 {¶ 12} The Ohio Supreme Court has articulated that it is reasonable for an officer to search an individual for weapons before placing the individual in the cruiser, if detention in the cruiser during the investigation prevents either the officer or the individual from being subjected to a dangerous condition. Lozada, 92 Ohio St.3d 74. Placing the individual in the cruiser, however, must be the least intrusive means of avoiding the dangerous condition. Id.
 {¶ 13} Here, the officer stated that the reason for handcuffing Dabney and placing him in the cruiser during the search of the Cadillac was for Dabney's and the officer's safety. (Tr. 20; Supp. Hrg. Tr. 84-85). Under Lozada, protection of an officer and the individual is a legitimate reason to infringe upon the liberty of an individual. However, the means used to restrain the liberty of the individual must be reasonable under the circumstances. When Dabney exited the Cadillac, Scott was already secured in the Bridgeport cruiser, therefore, the officers out numbered Dabney four to one. Dabney was then frisked, (which produced no weapon) handcuffed, (even though he was not under arrest) and was told he would be free to go after a search was performed on the Cadillac. (Tr. 20; Supp. Hrg. Tr. 84-85). Then Dabney, while handcuffed, was placed in the backseat of the Martins Ferry cruiser. Additionally, the officer admitted that through all of these actions Dabney was cooperative. While we recognize that keeping an officer safe from a dangerous condition is legitimate and weighty, given the above stated facts we cannot conclude that handcuffing Dabney behind the back, and placing him in the cruiser as a means to ensure the safety of him and the officers was reasonable under the circumstances. Id., citing Pennsylvaniav. Mimms (1977), 434 U.S. 106, 110.
 {¶ 14} Even though Dabney was not under arrest and no weapons were found on his person, for safety purposes the officer had the right to restrain his liberty, as long as the means used was the least intrusive. See Lozada, 92 Ohio St.3d 74. Under the facts presented, once Dabney was either handcuffed or placed in the cruiser, he ceased being a danger to the officers. A person that is handcuffed no longer poses a reasonable threat to use any weapon that he might have in his possession. State v.Deadwiley, 8th Dist. No. 81355, 2003-Ohio-297 (stating that the frisk was not valid because no reasonable grounds to suspect that individual had a gun and because frisking occurred after being handcuffed and did not remove handcuffs after found no weapon). Therefore, the dangerous condition to the officer was eliminated when Dabney was handcuffed.
 {¶ 15} Furthermore, given the facts presented, placing Dabney unhandcuffed in the backseat of the cruiser during the investigation would have removed any danger to the officers or to Dabney. Once detained in the backseat of the cruiser, an individual's access to the officers is eliminated and the individual is no longer exposed to the outside elements, i.e. cars driving past. Although this is a restraint on the individual's liberty, it is less intrusive than handcuffing and detaining the individual in the cruiser because it does not restrain the individual's liberty to the greater extent that results from using both handcuffs and detainment in a cruiser.
 {¶ 16} Therefore, given the specific facts in this case, i.e. Dabney's cooperation, the frisk produced no weapon, Dabney was not under arrest and would be free to leave after the Cadillac was searched, handcuffing and detaining Dabney in the back of a cruiser for the sole purpose of the officer's and Dabney's safety was not the least intrusive means to avoid the dangerous condition and, as such, was not reasonable. Thus, the seizure violated Dabney's Fourth Amendment rights. This holding is factually specific to the situation presented and, as such, is not meant to be interpreted to support the position that in every situation an officer would be acting unreasonable in handcuffing and detaining an individual who is not arrested in the cruiser while the officer finishes the investigation.
 {¶ 17} In accordance with our holding, the suppression motion should have been granted. The crack cocaine was a fruit of the poisonous tree and would not have been inevitably discovered. See State v. Perkins
(1985), 18 Ohio St.3d 193 (stating the "inevitable discovery" exception to the exclusionary rule permits the state to introduce evidence that would have been discovered by lawful means, without reference to police error or misconduct). The officer admits that Dabney would have been released after taking his personal belongings from the car. The crack cocaine was only found because Dabney was handcuffed and placed in the backseat of the cruiser. Therefore, the trial court erred in denying the motion to suppress. This assignment of error has merit.
 ASSIGNMENT OF ERROR NO. TWO {¶ 18} "The prosecutor was guilty of misconduct in his closing argument prejudicial to appellant's substantial rights (Tr. 218-219, 226, 227, 237, 248)."
 {¶ 19} The disposition of assignment of error number one renders the arguments raised in this assignment of error moot. Accordingly, we will not address this assignment of error.
 {¶ 20} For the foregoing reasons, the decision of the trial court is reversed, appellant's conviction is vacated and this case is remanded for further proceedings according to law and consistent with this Court's opinion.
Waite, P.J., concurs in judgment only; see concurring opinion.
Donofrio, J., concurs.
[1] A bill of sale was later found in an inventory search confirming Dabney's assertion. (Tr. 68, 73).