GROVES, Emanuella, J.
The defendant filed a Motion to Suppress, arguing that an Ohio State Highway Patrol trooper had no probable cause to arrest him, challenging the results of the field sobriety tests, and requesting exclusion of evidence and statements made by the defendant.
The facts from which this case arose are as follows:
On July 25, 2018 at 1:00 a.m., the defendant was stopped by an Ohio State Highway Patrol trooper for driving 102 MPH. When the trooper spoke to defendant he smelled marijuana and believed that the defendant's speech was slurred. The trooper asked the defendant to exit the vehicle. The trooper immediately handcuffed the defendant. The defendant asked, "Is there a reason I'm being arrested?" The trooper responded, "You are not being arrested. I'll explain everything in a second." The defendant further stated, "I gave you my license, I gave you my CCW. There's nothing I did wrong. There's no reason for you to handcuff me." The trooper again told defendant he was not under arrest. He advised defendant he was under investigative detention and advised him of his rights. The trooper then proceeded to pat down the defendant. The pat-down extended to the trooper searching inside all of defendant's pants pockets, including the smallest. The trooper reached inside each pocket. The trooper pulled out a pack of cigarettes and searched through the package. The trooper then pulled out the defendant's paper money and unfolded it. He also pulled out the lining of the pocket. During the search, the trooper asked the defendant several times whether he had marijuana on him. It was quite obvious from the dash cam that the trooper was searching for the marijuana he smelled. He did not find any.
Next, the trooper ordered the defendant to open his mouth and shined a flashlight in it. The trooper stated he was looking for "raised taste buds." The trooper then placed the defendant in the rear of the Highway Patrol cruiser, while the defendant was still handcuffed. The trooper and *687 another trooper searched the front and back seats and trunk of the defendant's car. Again, the troopers found nothing. Afterwards, the trooper removed the defendant from the cruiser. The trooper asked him if he had anything to drink. The defendant responded, "Earlier." The trooper removed the handcuffs from the defendant and performed two standardized field sobriety tests: horizontal nystagmus gaze and walk and turn. The trooper testified he decided to forego the one-leg stand because of defendant's "agitation." The dash cam did not show that defendant failed to cooperate. However, it did show the defendant repeatedly stating he did not do anything. The trooper placed defendant under arrest for OVI.
During the ride to the Patrol station, the defendant admitted that he had marijuana and gave it to the officers at the station. The marijuana was in the defendant's crotch. Once the defendant was released, the trooper stated that he found suspected crack cocaine in the back seat of the cruiser. The trooper testified that the suspected drug was lost or stolen, so the defendant was not charged with that offense.
The critical issue in this case is at what point was the defendant placed under arrest. The defendant argued he was under arrest after he was handcuffed, Mirandized, searched and placed in the Highway Patrol cruiser. These police actions were taken immediately after the defendant was ordered to exit his vehicle. On the other hand, the City of Cleveland argued the defendant was not arrested until the end of the roadside encounter. This occurred after defendant's exit from the cruiser, removal of handcuffs and completion of field sobriety tests.
Just as in Terry v. Ohio , the court's first task is to establish at what point in this police encounter does the Fourth Amendment become relevant.[1] The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Article I, Section 10 of the Ohio Constitution, protects individuals from unreasonable searches and seizures.[2] Ordinarily, police must obtain a warrant based on probable cause before they can arrest or search.[3] An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that the person stopped is or is about to be engaged in criminal activity.[4]
As the U.S. Supreme Court has held, "The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances."[5] The Court also stated, "The manner in which the seizure and search were conducted, is of course, a vital part of the inquiry as whether they were warranted at all. The Fourth Amendment proceeds *688 as much by limitations upon the scope of governmental actions as by imposing preconditions upon its initiation."[6] The entire deterrent purpose of the rule - excluding evidence seized in violation of the Fourth Amendment - rests on the assumption that "limitations upon the fruit to be gathered tend to limit the quest itself."[7] In essence, a police officer may conduct a brief warrantless search of an individual's person for weapons only if the officer has a reasonable and articulable suspicion that the "individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others."[8] Such a limited search is not intended to discover evidence of a crime, but to allow the officer to pursue his duties "without fear of violence."[9]
In Terry , the court noted that the officer "did not place his hands in their pockets... never did invade Katz' person beyond the outer surface of his clothes[10] ...[and] did not conduct a general exploratory search for whatever evidence of criminal activity he might find."[11] That did not happened here.
Given every court's duty of review as set forth in Terry , this court must evaluate at what point, if any, was the Fourth Amendment violated. Here, the trooper handcuffed and searched the defendant immediately upon defendant exiting his car. Unlike the officer in Terry , the trooper went into every pocket of the defendant's pants. As noted above, the trooper searched through the items found in the defendant's pocket. The trooper emptied the defendant's pockets and even pulled out the lining of the pockets to ensure he found everything possible in them. Clearly this search went beyond a search for weapons. This was a full custodial search, even though the trooper assured the defendant he was not in custody. The search went beyond a quest for weapons and became a general exploratory search. The analysis of the nature of the search is important because the search is one of the police actions which must be considered in the overall determination of at what point the defendant was actually placed under arrest.
Before searching the defendant, the trooper handcuffed him. It has long been held that a police officer during the course of a lawful investigative stop may take reasonable measures in order to ensure his safety while a suspect is being detained.[12] Police may handcuff a suspect where the use of such restraint is reasonably related to ensuring the safety of police officers during an investigative detention.[13] However, each situation is subject to review and, in a democratic society under the rule of law, law enforcement cannot exercise their authority under the "means justify the ends" policy. The "how" arrests are made and probable cause is established are critical considerations.
In Hopper ,[14] the Eighth District Court of Appeals found the defendant's Fourth *689 Amendment rights were not violated when the defendant was handcuffed. In that case, officers noticed the smell of marijuana and there were three individuals in the vehicle. The court found that, under those circumstances, the act of handcuffing did not convert the investigative stop into an arrest. In reaching that decision the court distinguished Rampey,[15] where, among other factors, handcuffing did convert the suspect's status from being under investigation to being under arrest.
A seizure becomes an arrest rather than a Terry detention if a reasonable person in the suspect's shoes would have understood the situation to constitute a restraint on his or her freedom of movement to the degree which the law associates with formal arrest.[16] The Hopper court found Rampey easily distinguishable because the suspects were neither put in a police car nor taken to the police station before the evidence was discovered.
In another handcuffing case, State v. Deadwiley , the Eighth District Court of Appeals found a conversion from investigative stop to arrest.[17] The court found that "the evidence showed the defendant had been handcuffed with the intent to place him in the police car. His liberty had been restrained to the point where it could only be concluded that he had been arrested."[18] It has generally been stated that a person is under arrest when a reasonable person would believe that his liberty had been restrained.[19]
In the case now before this court, the defendant was handcuffed immediately upon exiting his vehicle. He asked why he was being arrested, asked why he was being handcuffed, and then stated that he didn't do anything. The trooper testified that he handcuffed the defendant because of the odor of marijuana in the car.
The final police action the court will review is the placement of the defendant in the police car while handcuffed. A police order for a person to sit in a police car does not automatically transform an investigative detention into a formal arrest.[20] In Pickett , the defendant was handcuffed, read her rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and placed in the police cruiser. The court rejected the defendant's claim that those actions converted the investigative stop into an arrest. In Pickett , the defendant ran from police and attempted to swallow evidence. The court found that the manner in which the defendant was detained did not exceed the bounds of a lawful investigative detention.[21] Here, however, the defendant was placed in the Highway Patrol cruiser while the troopers searched his car. The defendant did in fact have drugs on him, but this is not relevant to the court's inquiry, because the confession and alleged finding of drugs occurred after the defendant was transported from the site of the initial stop.
*690 Now that this court has examined each police action individually and recognizing that these actions may possibly be justified individually (except for the custodial search), it is necessary to examine all of the trooper's actions collectively. It has long been established that whether an investigative stop is reasonable in a given situation depends upon the totality of the circumstances surrounding the incident.[22] The defendant in this case was stopped for excessive speed. There is no question the trooper had reasonable articulable suspicion to stop the defendant in the first place. Next, in speaking with the defendant, the trooper smelled a strong odor of marijuana. Certainly, this observation coupled with the high rate of speed justified the trooper in ordering the defendant to exit his vehicle for further investigation. The trooper chose to handcuff the defendant because of the odor of marijuana and his experience that this may lead to the finding of drugs and/or weapons.
But, as noted above, the defendant did not attempt to flee, and was not uncooperative. The defendant questioned the reason for the handcuffs and asked why he was under arrest. The trooper responded he was under investigative detention. Although the defendant was handcuffed, the trooper conducted a pat-down which quickly turned into what may now plainly be seen as an exploratory search. Once the defendant was handcuffed, the concern for the troopers' safety was presumably minimized. Nonetheless, the trooper patted down the defendant and conducted a thorough search of his pockets. While conducting the search, the trooper continued to ask the defendant where the drugs were. Clearly, the trooper was determined to discover the source of the marijuana odor.
After handcuffing the defendant, reading him his rights, patting him down and searching him, the trooper placed him inside the cruiser. The fact the defendant later admitted to having marijuana in his crotch could have given the trooper reason to handcuff the defendant. However, there was no probable cause at that point. The search of the vehicle did not produce any evidence of the commission of a crime. Having the odor of marijuana about you is not itself a crime. As the defendant sat in the cruiser, the only other police action remaining was his actual conveyance to the police station. However, no evidence of a crime was obtained. The trooper merely had evidence of a traffic infraction. This court finds that, under the circumstances, and given the cumulative actions of the trooper, a reasonable person would believe he had been arrested as he sat handcuffed in the cruiser.
Once arrested, the trooper could not "un-arrest" the defendant, but the defendant could not remain in the cruiser without evidence of a crime. As the trooper attempted to gather evidence for an arrest he had already made, he had exceeded the limitations permitted by the balance of lawful governmental action and personal rights. Once the trooper removed the defendant from the cruiser, removed the handcuffs and conducted the field sobriety tests, he was forbidden in his quest to gather any further evidence. The sequence of police actions is particularly important here. The trooper was required to establish probable cause before his actions converted the investigative stop into an arrest. This limitation is grounded in the time-honored and vitally important Fourth Amendment protection against unreasonable searches and seizures. Consequently, this court grants defendant's Motion to Suppress. All evidence secured after the trooper removed the defendant from the *691 cruiser for further investigation is hereby excluded.

Terry v . Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)

Id. at 16, 88 S.Ct. 1868

State v. Hopper, 8th Dist. Cuyahoga Nos. 91269, 2009-Ohio-2711, 2009 WL 1623105, citing Chambers v. Maroney (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419

Id. at ¶ 15, citing State v. Harrell, Cuyahoga App. No. 89015, 2007-Ohio-5322, 2007 WL 2875135 ¶ 8, quoting U.S. v. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621

Terry at 29, 88 S.Ct. 1868 citing U.S. v. Poller , 43 F.2d 911, 914, 74 A.L.R. 1383 (C.A. 2d Cir. 1930) ; see e.g. Linkletter

Ohio v. Moorer , 2014-Ohio-4776, 23 N.E.3d 173, ¶ 11 citing Terry at 24, 88 S.Ct. 1868

Id. , citing Adams v. Williams 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)

Terry , 392 U.S. at 29, 88 S.Ct. 1868

Terry, 392 U.S. at 30, 88 S.Ct. 1868

Id.

State v. Bobo , 37 Ohio St. 3d 177, 178, 524 N.E.2d 489 (1988).

State v. Hopper , 8th Dist. Cuyahoga Nos. 91269, 2009-Ohio-2711, 2009 WL 1623105

State v. Lofton , 10th Dist. No. 84AP-408, 1985 WL 10105 (Aug. 8, 1985)

Id.

State v. Rampey , Stark App. No. 2004CA00102, 2006-Ohio-1383, 2006 WL 747603 at ¶ 14.

Id.

State v. Deadwiley , 8th Dist. Cuyahoga No. 81355, 2003-Ohio-297, 2003 WL 160711

Id. at ¶ 16.

Id. citing United States v. Mendenhall , 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)

State v. Pickett , 2000 WL 1060653 ¶ 13 citing State v. Broomfield (Sept. 13, 1996), Clark App. No. 95-CA-0103, 1996 WL 631211, unreported, citing State v. McFarland (1982), 4 Ohio App 3d 158, 446 N.E.2d 1168.

Id. at ¶ 15

State v. Bobo , 37 Ohio St. 3d 177, 178, 524 N.E.2d 489 (1988)