[Cite as *State v. Hall*, 2017-Ohio-446.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                          :

     Plaintiff-Appellant,          :

v.                                      :            No. 16AP-473
                                                    (C.P.C. No. 15CR-2054)
David E. Hall,                          :

     Defendant-Appellee.           :            (REGULAR CALENDAR)

---

D E C I S I O N

Rendered on February 7, 2017

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellant. **Argued:** *Barbara A. Farnbacher.*

**On brief:** *Jeremy Dodgion*, for appellee. **Argued:** *Jeremy Dodgion.*

---

APPEAL from the Franklin County Court of Common Pleas

TYACK, P.J.

{¶ 1} The state of Ohio is appealing from the trial court's granting of a motion to suppress. The assignment of error presented corresponds to that:

> THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT'S MOTION TO SUPPRESS.

{¶ 2} David E. Hall was either sleeping or passed out in a motor vehicle in the parking lot of a drinking establishment when the motor vehicle was approached by two Columbus police officers. The officers knocked on a window of the motor vehicle but Hall did not immediately respond.

{¶ 3} The two officers shone flashlights into the interior of the vehicle but observed nothing illegal.

{¶ 4} The officers resumed knocking on the window of the vehicle, but Hall again did not immediately respond. Finally, Hall came to a little and then knocked on the window from inside of the vehicle. Hall then went to sleep again or passed out again. Hall had a set of keys in his hand but the engine for the vehicle was not running and he made no effort to start the car or move the car.

{¶ 5} The officers decided to open the vehicle's door to further investigate the situation. One of the officers then observed what the officer felt was a controlled substance. Hall was arrested and eventually indicted on a charge of possession of cocaine with a major drug offender specification.

{¶ 6} In Ohio, there is a statute which bars an individual being intoxicated while in physical control of a motor vehicle. R.C. 4511.194(A) and (B) read:

> A) As used in this section:
>
> (1) "National highway traffic safety administration" has the same meaning as in section 4511.19 of the Revised Code.
>
> (2) "Physical control" means being in the driver's position of the front seat of a vehicle or in the driver's position of a streetcar or trackless trolley and having possession of the vehicle's, streetcar's, or trackless trolley's ignition key or other ignition device.
>
> (B) No person shall be in physical control of a vehicle, streetcar, or trackless trolley if, at the time of the physical control, any of the following apply:
>
> (1) The person is under the influence of alcohol, a drug of abuse, or a combination of them.
>
> (2) The person's whole blood, blood serum or plasma, breath, or urine contains at least the concentration of alcohol specified in division (A)(1)(b), (c), (d), or (e) of section 4511.19 of the Revised Code.
>
> (3) Except as provided in division (E) of this section, the person has a concentration of a listed controlled substance or

a listed metabolite of a controlled substance in the person's whole blood, blood serum or plasma, or urine that equals or exceeds the concentration specified in division (A)(1)(j) of section 4511.19 of the Revised Code.

{¶ 7} The officers, upon approaching the vehicle and investigating, had reasonable grounds to believe that Hall was under the influence of something. Their extended knocking on the window of the vehicle elicited no response for a significant period of time. Hall finally came to a little but made no effort to respond to the officers and what they later asserted was their effort to check on his well-being. Instead, he knocked on the vehicle's window from the inside and then passed out again or went back to sleep.

{¶ 8} Unfortunately, we live in a time where people are dying daily from drug overdoses. People also die from drinking too much alcohol. Police officers who encounter a person passed out or unconscious in a motor vehicle in all likelihood have an obligation to further investigate the situation. They also have a right to investigate a possible violation of R.C. 4511.194. Because of the situation presented by Hall's apparent condition, the officers had the right to open the vehicle's door to at least communicate with Hall about his condition. Once the vehicle's door was open, the cocaine was in plain view.

{¶ 9} The trial court should not have decided that this was an illegal search or seizure. Counsel for Hall asserts that the officers were really acting in an effort to investigate rumors that Hall was engaged in illegal trafficking in controlled substances at the bar where his SUV was parked. The Supreme Court of the United States has decided that the actual intention of police is irrelevant to the legality of a search. If the officers have reasonable grounds to believe they are witnessing illegal activity, they can investigate further. A search or seizure does not become illegal because police were hoping to search or seize, assuming what the police initially witnessed gave them probable cause to investigate or even arrest for a crime. Hall's physical state combined with his having keys to a motor vehicle in his hand gave the police the right to open the door of the SUV and inquire and investigate the situation.

{¶ 10} The state of Ohio's sole assignment of error is sustained.

{¶ 11} The granting of the motion to suppress is reversed and the cause is remanded for further appropriate proceedings.

*Judgment reversed and remanded for further proceedings.*

KLATT, J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 1}   I respectfully dissent from the decision of the majority.  In all but the most unusual of circumstances, we are not empowered to substitute our view of the evidence for the factual determinations of the trial court in reviewing motions to suppress.  The Supreme Court of Ohio has stated:

> "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St. 3d 19, [20], 1 Ohio B. 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539."

*In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 50, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 2}   The facts as found by the trial court, but not discussed in the majority decision, were that two Columbus police patrol officers at a time near the end of their shift drove by a bar on the northeast side of the city.  They noticed Hall's car legally parked in the first row of cars outside the bar.  They identified Hall's car "as a vehicle frequently driven by Defendant Hall.  Neither officer had previously met Defendant Hall, but they had heard rumors over a period of several months that Defendant Hall had been selling

cocaine at the bars in the area." (June 17, 2016 Decision and Entry at 2.) The officers' goal was to "attempt to initiate a consensual encounter with him." *Id.*

{¶ 3} The trial court found that, "[w]hen the officers made this decision, they had no reasonable suspicion that Defendant Hall had committed or was about to commit a crime or violation of the law." *Id.* They eventually decided to park their cruiser and go into the bar to look for Hall. As they walked on the sidewalk between the bar and the first row of cars, they noticed that Hall was in his car and appeared to be "asleep behind the wheel of the vehicle." *Id.* at 3. One officer approached the driver side door, and the other approached the passenger side door.

{¶ 4} The officer at the driver side window awoke Hall by shining a flashlight into the car and knocking on the driver's window. Hall "smiled, waved his hand, knocked on the driver's window, and then laid back in his seat and appeared to be going back to sleep." *Id.* It was at this point that the officer at the driver side of the vehicle opened the driver's door. The trial court stated in its findings of fact that the officer at the driver door "explained that he decided to open the driver's door in order to talk to Defendant Hall and make certain that he was okay and not experiencing a medical emergency." *Id.* The trial court made the following further findings in its statement of facts:

> The officers admitted there were no objective signs of a medical emergency, such as vomit on Defendant Hall's person or a request from Defendant Hall for help. Further, the officers acknowledged that Defendant Hall could have summoned help by pressing the alert button on the SUV's key fob. Moreover, the officers did not call for emergency medical services. Rather, Defendant Hall merely acknowledged the officers' presence, but elected not to speak to them. Finally, the officers acknowledged that they did not see anything suspicious in the vehicle until after Officer Dyer had opened the door of the vehicle and ordered Defendant Hall from the vehicle.

*Id.* at 4.

{¶ 5} The trial court's statement of facts does not include findings that Hall was "passed out" or took a "significant" time to respond to the officer's "extended" knocking, or that Hall "came to." We are bound to accept the trial court's factual findings that Hall

appeared to the officers to be asleep behind the wheel of his vehicle unless we find they are not supported by competent, credible evidence. We have not made such a finding. I can only conclude from the factual findings of the trial court that it could not rely on the testimony of the officers to support a community caretaking/medical emergency exception, when it found a lack of probable cause for Hall's detention. The state did not offer objective evidence of the officers' explanation to support the Fourth Amendment exception, and the trial court found none.

{¶ 6} The state concedes that opening the door of Hall's car constituted detention. (State's Brief at 15-16.) This detention or seizure must result from reasonable suspicion that entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones,* 70 Ohio App.3d 554, 556-57 (2d Dist.1990), citing *Terry v. Ohio,* 392 U.S. 1, 27 (1968); *State v. Carter,* 69 Ohio St.3d 57, 66 (1994).

{¶ 7} The propriety of a police officer's investigative stop or detention is viewed in light of the totality of the surrounding circumstances to determine whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing on the part of the detainee. *State v. Bobo,* 37 Ohio St.3d 177 (1988), paragraph one of the syllabus. The totality of the circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Andrews,* 57 Ohio St.3d 86, 87-88 (1991); *State v. Bradford*, 10th Dist. No. 14AP-322, 2014-Ohio-5527, ¶ 16.

> A person "may not be detained even momentarily without reasonable, objective grounds for doing so." [*Florida v. Royer*, 460 U.S. 491, 498 (1983) (plurality opinion). Whenever a person's freedom of movement is curtailed by police using either force or a show of authority, that person is "seized" for purposes of a Fourth Amendment analysis. *State v. McFarland*, 4 Ohio App.3d 158, 159, 4 Ohio B. 252, 446 N.E.2d 1168 (8th Dist.1982), citing *Dunaway v. New York*, 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979). The Fourth Amendment requires that any seizure of a person must be reasonable. *Id.* If the government obtains evidence through actions which violate the constitutional prohibition against

> unreasonable searches and seizures, such evidence must be excluded at trial as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).
>
> Thus, a search conducted without a warrant issued upon probable cause violates the Fourth Amendment, unless it comes within one of the "few specifically established and well-delineated exceptions" to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). One of the exceptions to the warrant requirement is an investigative detention, commonly referred to as a *Terry* stop. *See* [*Terry v. Ohio,* 392 U.S. 1, 27 (1968)]. Under *Terry*, a police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer's belief that criminal activity is afoot. *Terry* at 21-22. "An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.' " *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, 817 N.E.2d 864, quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981).

*Bradford* at ¶ 14-15.

{¶ 8} Here, the critical question was whether a reasonable police officer would have opened the door of Hall's vehicle based on the facts testified to by the police officers involved in opening Hall's vehicle door. The trial court found the officers' testimony describing the facts as they existed at the time to be an explanation but not the reason for the detention.

{¶ 9} The officers had testified that the very reason they went to the bar that evening was to try to engage in a consensual encounter with Hall. They had his photo and information about the car he usually drove. The trial court did not find from the evidence that the reason for opening Hall's car door was out of concern for his welfare.

{¶ 10} The community caretaking exception to the Fourth Amendment requires objective facts and not just the statements of the officers that they believed that Hall was in immediate need of aid. *State v. Dunn,* 131 Ohio St.3d 325, 2012-Ohio-1008, ¶ 26 (there

must be "*objectively reasonable* grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury to effect a community-caretaking/emergency-aid stop."). (Emphasis added.) The trial court found no evidence of objective facts to support the officer's statement that he opened the door because he wanted to make certain Hall was not experiencing a medical emergency. Supporting this is the testimony of the officers that there were no objective signs of a medical emergency (such as vomit) and that "they did not see anything suspicious in the vehicle until after Officer Dyer had opened the door of the vehicle and ordered Defendant Hall from the vehicle." (Decision and Entry at 4.) The trial court concluded that prior to opening Hall's car door the officers had no reason to conclude that criminal activity was afoot. *Bradford* at ¶ 15, citing *Terry* at 21-22.

{¶ 11} While the majority focuses on the trial court's acknowledgement that the car's key fob was in Hall's hand (the car was legally parked but not running) and that he turned out to be intoxicated, this is a red herring that is useful only after the fact. R.C. 4511.194(A) and (B). This is because the trial court did not find the observation of the keys in Hall's hand to be a part of the officer's observation prior to the time of the detention. The officers testified that "they did not see anything suspicious in the vehicle until after Officer Dyer had opened the door of the vehicle and ordered Defendant Hall from the vehicle." (Decision and Entry at 4.) Under *Terry,* the officer must hold a reasonable suspicion, *"based on specific, articulable facts* which, taken together with the rational inferences from those facts, reasonably warrant the *officer's belief that criminal activity is afoot.*" (Emphasis added.) *Bradford* at ¶ 15, citing *Terry* at 21-22.

{¶ 12} Based on its findings of fact, it appears the trial court viewed the knock on the door window and Hall's knock back as an attempted consensual encounter that Hall refused: "Rather, Defendant Hall merely acknowledged the officers' presence, but elected not to speak to them." (Decision and Entry at 4.) The trial court stated it was clear from Hall's conduct that he sought to terminate the encounter with the officers and that he was free to ignore the officer to terminate the encounter and that Hall acknowledged the officer and thereafter ignored him. Thus, any consensual encounter had ended and it was at this point that the officer on the driver side opened the door.

{¶ 13} The trial court found from the officers' testimony that the facts as they existed at the time of the detention showed no "particularized and objective basis for suspecting legal wrongdoing on the part of the detainee" *Bradford* at ¶ 16, citing *Bobo* at paragraph one of the syllabus, citing *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. Based on the trial court's findings of fact, "[t]he totality of the circumstances * * * [as] viewed through the eyes of a reasonable and prudent police officer *on the scene*" provide no reasonable suspicion for opening Hall's car door after he refused to talk to them. (Emphasis added.) *Bradford* at ¶ 16; *Andrews* at 87-88.

{¶ 14} The majority states that the actual intention of police is irrelevant to the legality of a search. That is certainly true when a police officer subjectively thinks he or she has reasonable suspicion to detain, but objectively, using a reasonable police officer on the scene analysis, does not. Applying an objective standard is not for the purpose of supplying a reason *after the fact*, but rather, it is for determining whether a suspicion formed *at the time* of the detention was reasonable. *Id.*

{¶ 15} In applying *Terry, Carter,* and *Bradford*, we must view *this* officer's actions from an objective, reasonable standpoint according to the facts as they existed, which included his testimony that he did not see anything suspicious in the vehicle until he had opened the vehicle door and ordered Hall to exit it. While the key fob was mentioned, the testimony does not support that this was a factor in ordering Hall from the vehicle, and the officers did not suspect Hall was intoxicated until the officer opened the driver door. The trial court granted Hall's motion to suppress because it could not find from the evidence that the officers opened the car door based on a reasonable suspicion.

> In examining a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions of the trier of fact. *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542; *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583. Where there is substantial evidence to support the factual findings of the trial court, its ruling will not be disturbed on appeal absent an error of law. *DePew, supra.* The trier of fact is in a unique position to observe a witness face-to-face. Here, the trial court had the opportunity to observe the witnesses and found that Officer Lusk failed to

> demonstrate that he had an "articulate and reasonable suspicion" that defendant was in violation of the speed limit. *The trial court, as the trier of fact, had the discretion to believe or not believe the police officer's version of the events. State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. The trial court obviously chose not to believe the police officer and this court is bound to accept the trial court's findings of fact as they are supported by competent, credible evidence.

(Emphasis added.) *State v. Fountain*, 10th Dist. No. 94APC01-113 (Aug. 30, 1994). Whether or not the trial court believed the officers' statements in support of a community/caretaking exception, the trial court found no objective evidence to support them as is required by *Dunn*.

{¶ 16} We cannot second guess the trial court's statement of facts; we must accept the facts as the trial court found them, unless we find on a review of the record that they are not supported by competent, credible evidence. We have made no such determination. Under the facts as found by the trial court, the conclusions of the majority are not supportable.

{¶ 17} For these reasons, I respectfully dissent and would affirm the judgment of the trial court.

———————————