[Cite as *State v. Cassel*, 2021-Ohio-661.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-L-097** |
| JAMES CASSEL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2020 CR 000119.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Gregory S. Robey*, Robey & Robey, 14402 Granger Road, Cleveland, OH 44137 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, James Cassel, appeals the denial of his Motion to Suppress and his Sentence following the entry of a Plea of No Contest in the Lake County Court of Common Pleas. For the following reasons, we affirm the denial of the Motion to Suppress and the Sentence imposed.

{¶2} On May 4, 2020, the Lake County Grand Jury returned an Indictment against Cassel charging him with the following: Trafficking in Heroin (Count 1), a felony of the second degree in violation of R.C. 2925.03(A)(2); Possession of Heroin (Count 2),

a felony of the second degree in violation of R.C. 2925.11; Trafficking in Cocaine (Count 3), a felony of the fifth degree in violation of R.C. 2925.03(A)(2); Possession of Cocaine (Count 4), a felony of the fifth degree in violation of R.C. 2925.11; Possessing Criminal Tools (Count 5), a felony of the fifth degree in violation of R.C. 2923.24; Having Weapons while under Disability (Count 6), a felony of the third degree in violation of R.C. 2923.13(A)(2); Carrying Concealed Weapons (Count 7), a felony of the fourth degree in violation of R.C. 2923.12(A)(2); and Improperly Handling Firearms in a Motor Vehicle (Count 8), a felony of the fourth degree in violation of R.C. 2923.16(B). Counts 1 through 4 included firearm specifications pursuant to R.C. 2941.141.

{¶3} On May 8, 2020, Cassel was arraigned and entered pleas of not guilty to all counts of the Indictment. On the same date, Cassel filed a Motion to Suppress and, on May 27, a Supplement to Motion to Suppress.

{¶4} On May 22, 2020, the State filed its Response to the Motion to Suppress.

{¶5} On June 19, 2020, a suppression hearing was held.

{¶6} On June 23, 2020, the trial court denied the Motion to Suppress. The court made the following factual findings:

> Patrolman Anthony Pecnik ("Off. Pecnik"), who has been with the Wickliffe Police Department for six years, testified that he was driving down Euclid Avenue after 2:00 a.m. on January 2, 2020 when he saw a vehicle in the parking lot of Gabe's with its lights on. Off. Pecnik knew that Gabe's did not allow overnight parking in its lot, and had signs posted to prevent it, so he stopped to investigate. The vehicle was running and the lights were on, and the person in the driver's seat (later identified as Defendant) was asleep. Off. Pecnik called for backup, then ran the license plate while he waited; the car was registered to Defendant, who had a valid driver's license and no active warrants. Patrolman Nicholas Merrifield ("Off. Merrifield"), who has been with the Wickliffe Police Department for four years and was previously with the Cleveland Police Department for three years, responded to assist Off. Pecnik. Off. Pecnik approached the vehicle and knocked on the driver's side window, then shone his flashlight into the vehicle. When Defendant woke up Off. Pecnik asked him to

2

open the door. Off. Merrifield approached the vehicle from the front, heard the engine rev, and yelled "No, no, no don't put the car in drive." Off. Pecnik opened the driver's side door, and Off. Merrifield opened the passenger side door, and both officers instructed Defendant to exit the vehicle. Defendant appeared lethargic and "out of it," and based on the lethargy, the fact that he was sleeping or "passed out" in the car, and the difficulty in waking him, both officers were concerned that he was intoxicated. Both officers testified that Defendant put the vehicle in drive a second time, and Off. Merrifield testified that he got into the passenger's side of the vehicle and put the vehicle back in park; Off. Merrifield testified that the vehicle rolled forward a bit, but Off. Pecnik testified that it did not move. Off. Pecnik used his Taser, then pulled Defendant out of the vehicle. Defendant refused to put his hands behind his back, but after the officers used the Taser several more times Defendant was handcuffed, searched, and put in the back of a patrol car. [Cassel was arrested for Obstructing Official Business.] The officers then performed an inventory search pursuant to department policy and had Defendant's vehicle towed.

Defendant called Amara Hassan ("Hassan") as a witness. Hassan testified that she lives with Defendant in the apartment building next to Gabe's, that many tenants in the apartment building park in Gabe's parking lot, and that Defendant usually parks there without a problem. She also testified that she had driven home behind Defendant that night and that he had not driven like someone who was intoxicated.

{¶7} On July 22, 2020, Cassel entered a Written Plea of No Contest to Trafficking in Heroin (Count 1) and Having Weapons while under Disability (Count 6) including the specification. Cassel further acknowledged that he was on post-release control at the time he committed the offenses to which he was pleading. On the State's motion, the remaining Counts of the Indictment were dismissed.

{¶8} On August 26, 2020, the sentencing hearing was held. Inter alia, the trial court ordered Cassel to serve an indefinite prison term with a stated minimum term of four years and a maximum term of six years for Count 1 and a concurrent twenty-four-month prison term for Count 6. The court ordered Cassel to serve consecutive prison terms of one year for the firearm specification and three months for the post-release control

3

violation. Cassel's aggregate prison term ranged from a minimum of five years and three months to a maximum of seven years and three months.

{¶9} At this point, we emphasize that the seven years and three months is the maximum *aggregate* term for all sentences imposed and not the "maximum prison term" imposed for Trafficking as a "qualifying felony" pursuant to R.C. 2929.144(B). Under the Reagan Tokes Law, an indefinite prison term is imposed for qualifying felonies such as Trafficking. The sentencing judge selects a "stated minimum term" from the possible terms set forth in R.C. 2929.14(A)(1)(a) or (2)(a). The maximum prison term for that felony is calculated to be "the minimum term imposed on the offender * * * plus fifty percent of that term." R.C. 2929.144(B)(1). In the present case, that yields a sentence of between four and six years for Trafficking.

{¶10} Independent of the indefinite prison sentence imposed for Trafficking, the trial court imposed additional prison terms of one year for the firearm specification and three months for the post-release control violation. By law, these terms are required to be served consecutively to the indefinite prison term for Trafficking. *See* R.C. 2929.14(C)(1)(a) and R.C. 2929.141(A)(1). They do not become part of Cassel's indefinite sentence for Trafficking but are considered as part of Cassel's aggregate sentence. Thus, Cassel will serve an aggregate minimum term of five years and three months (one year for the firearm specification plus three months for the post-release control violation plus the four-year stated minimum term for Trafficking) and potential aggregate maximum term of seven years and three months (one year for the firearm specification plus three months for the post-release control violation plus the six-year maximum prison term for Trafficking).

{¶11} On August 31, 2020, Cassel's sentence was memorialized in a written

4

Judgment Entry of Sentence.

{¶12} On September 18, 2020, Cassel filed a Notice of Appeal. On appeal, he raises the following assignments of error:

{¶13} "[1.] The trial court erred in ruling that the investigatory detention of Appellant was proper."

{¶14} "[2.] The trial court erred in ruling that the search of Appellant's vehicle was proper."

{¶15} "[3.] The trial court erred in ruling that the arrest of Appellant was proper."

{¶16} "[4.] The trial court erred in imposing an incorrect indefinite sentence upon Appellant."

{¶17} Cassel's first three assignments of error challenge aspects of the trial court's ruling on his Motion to Suppress. The following standard applies to each assignment. "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence," but "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶18} In the first assignment of error, Cassel challenges the validity of the investigatory stop or detention.

{¶19} The Fourth Amendment to the United States Constitution as well as Article I, Section 14 of the Ohio Constitution prohibit unreasonable searches and seizures, including "brief investigative stops that fall short of traditional arrests." *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, 126 N.E.3d 1132, ¶ 9. "An officer may perform

5

such a stop when the officer has a reasonable suspicion based on specific and articulable facts that criminal behavior has occurred or is imminent." *Id.* The standard is described as an objective one: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1688, 20 L.Ed.2d 889 (1968). The determination as to whether "an objective and particularized suspicion that criminal activity was afoot must be based on * * * a totality of the surrounding circumstances." *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991); *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 19 ("[t]he 'reasonable and articulable suspicion' analysis is based on the *collection* of factors, not on the individual factors themselves").

{¶20} The facts available to Officers Pecnik and Merrifield in the present case readily support the conclusion that the investigatory detention of Cassel was reasonable and justified. Cassel was found after 2:00 a.m. unconscious and behind the wheel of a vehicle with the engine running, the lights on and music playing. The vehicle was parked in a commercial property that did not allow overnight parking. Other courts have reached the same conclusion. *State v. Hall*, 2017-Ohio-446, 84 N.E.3d 263, ¶ 8 (10th Dist.) ("[p]olice officers who encounter a person passed out or unconscious in a motor vehicle in all likelihood have an obligation to further investigate the situation"); *State v. Eason*, 2016-Ohio-5516, 69 N.E.3d 1202, ¶ 23-24 (8th Dist.) ("investigation and detention of appellant" were justified where the officer observed a vehicle illegally parked after hours, the vehicle was idling, and appellant was "sleeping in the driver's seat"); *State v. Jones*, 4th Dist. Washington No. 11CA13, 2012-Ohio-1523, ¶ 14 ("[officer] Newell had a reasonable, articulable suspicion that Jones had driven under the influence of alcohol

6

and/or a drug of abuse, parked the vehicle, and passed out behind the wheel" where he observed "Jones with his head 'slumped down,' asleep behind the wheel with the key in the ignition and the headlights on").

{¶21} Contrary to this conclusion, Cassel identifies a number of factors that would weigh against a finding of reasonable suspicion. These factors are generally irrelevant to our analysis inasmuch as they are circumstances that were not known to either Officer Pecnik or Merrifield at the time of the detention. For example: Cassel had parked in the commercial lot on prior occasions without incident; the vehicle was running because it was cold outside; and his girlfriend had observed him driving without impairment. Appellant's brief at 8-9. Likewise, the fact that there were no dispatches or other complaints regarding Cassel's driving or parking does not mitigate against a finding of reasonable suspicion. The officers' own observations are sufficient in the present case. We note that the detentions in *Hall* and *Eason* were based solely on the officers' observations.

{¶22} Finally, Cassel notes that the officers had confirmed that the vehicle was registered to him and that he had a valid driver's license and no warrants. However, without an investigatory detention, the officers were unable to confirm Cassel's identity as the occupant of the vehicle or determine that he was in a condition to operate the vehicle. Officer Merrifield testified at the suppression hearing that the windows of the vehicle were tinted making it difficult to see inside.

{¶23} The State in turn argues in support of the denial of the Motion to Suppress that the officers are entitled to "approach a person to provide assistance without any reasonable basis to suspect criminal activity." Appellee's brief at 5. *See Geneva v. Fende*, 11th Dist. Ashtabula No. 2009-A-0023, 2009-Ohio-6380, ¶ 17 ("under appropriate

7

circumstances, a police officer will be justified in approaching a vehicle to provide assistance, without needing any reasonable basis to suspect criminal activity"). In the present case, the officers did not merely approach Cassel to inquire about his well-being but had determined to detain him until they completed their investigation. As the events unfolded, Cassel attempted to drive away before the officers were able to identify who he was or whether he was impaired. The duty to determine whether Cassel needed assistance is certainly part of the totality of the circumstances in this case but is not determinative of the propriety of the detention.

{¶24} The first assignment of error is without merit.

{¶25} In the second assignment of error, Cassel contends that the warrantless search of his vehicle was improper.

{¶26} "An inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement of the Fourth Amendment to the United States Constitution." *State v. Hathman*, 65 Ohio St.3d 403, 405, 604 N.E.2d 743 (1992). "To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." *Id.* at paragraph one of the syllabus; *State v. Mesa*, 87 Ohio St.3d 105, 717 N.E.2d 329 (1999), syllabus ("[a]n inventory search of a compartment of a lawfully impounded vehicle does not contravene the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution where the search is administered in good faith and in accordance with reasonable police procedure(s) or established routine").

{¶27} At the suppression hearing, a copy of the Wickliffe Police Department's Towing Procedures, Policy No. 3.55 was admitted into evidence. Pursuant to these

8

Procedures, reasons for towing a vehicle include "arrest of the driver." Furthermore, "[e]very vehicle impounded by the Wickliffe Police Department shall be carefully inventoried and documented," the scope of the inventory shall include "[a]ll accessible areas, * * * the passenger compartment, trunk or bed of vehicle, glove box, center console, and any other area where items of value may be stored." The inventory of Cassel's vehicle produced a loaded firearm, heroin, and xylazine from areas accessible from the driver compartment.

{¶28} Cassel argues that the decision to impound the vehicle was not reasonable inasmuch as the officers made no effort to contact family members to remove the vehicle or to secure it where it was parked. We do not find the decision to impound the vehicle unreasonable. As explained by Officer Merrifield: "we have complaints from the businesses about cars being left in the lot overnight, stuff like that and it has no reason to be there."

{¶29} The Ohio Supreme Court has observed that, even when it is possible to afford a defendant the opportunity to make alternative arrangements for removing a vehicle, "[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." (Citations omitted.) *Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810, ¶ 19. Given Cassel's behavior and the circumstances of his arrest in the present case, officers were fully justified in deciding to impound the vehicle.

{¶30} Cassel further argues that "the prospect that this was an illegal pre-textual search" exists because it was unclear "whether police actually called for the tow prior to conducting the claimed inventory search." Appellant's brief at 10. We disagree. Cassel had been arrested prior to both the inventory of the vehicle and the towing agency being

9

contacted. Cassel's arrest, per Wickliffe Policy No. 3.55, provided the officers with justification for impounding the vehicle. Once the decision to impound has been made, it makes little difference whether the search was initiated before or after the towing agency was contacted since department policy requires the contents of the vehicle to be inventoried.

{¶31} Lastly, Cassel argues that the inventory search of his vehicle was improper as his arrest was illegal. For the reasons set forth under the third assignment of error, Cassel's arrest was legal and so has no bearing on the validity of the inventory search.

{¶32} The second assignment of error is without merit.

{¶33} In the third assignment of error, Cassel argues that his warrantless arrest for Obstructing Official Business was improper because that charge requires "an affirmative act by the accused." Cassel maintains that he did not commit an affirmative or overt act but rather "merely refused to exit his vehicle after being asked repeatedly by officers." Appellant's brief at 11.

{¶34} "The standard for a constitutionally valid arrest is probable cause, 'defined in terms of facts and circumstances "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense."'" (Citations omitted.) *State v. Tibbetts*, 92 Ohio St.3d 146, 153, 749 N.E.2d 226 (2001).

{¶35} A charge of Obstructing Official Business is defined thus: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A). The statute has been construed so that "the state must show that the accused engaged in an overt act; refusing to answer the door

10

or refusing to obey an officer's request cannot form the basis of a conviction for obstructing official business." *State v. Kehres*, 11th Dist. Ashtabula No. 2019-A-0059, 2020-Ohio-1320, ¶ 19; *Cleveland Metroparks v. Cauthen*, 8th Dist. Cuyahoga No. 109297, 2020-Ohio-5266, ¶ 12 ("[i]t has long been settled that an affirmative act is required [to] support a conviction of obstructing official business"). On the other hand, "Ohio appellate authority * * * holds that fleeing from a police officer who is lawfully attempting to detain a suspect under the authority of *Terry* is an affirmative act that hinders or impedes the officer in the performance of the officer's duties and constitutes a violation of R.C. 2921.31, obstructing official business." *State v. Johnson*, 2017-Ohio-5527, 92 N.E.3d 1256, ¶ 33 (10th Dist.) (cases cited).

{¶36} In the present case, Cassel engaged in several overt acts while attempting to flee from officers performing an investigative detention. As noted by the trial court, testified to by the officers, and corroborated by body camera videos, Cassel put or attempted to put his vehicle in drive multiple times and engaged the accelerator. We do not find it material whether the vehicle actually moved. Cassel's actions caused the officers to taser him and forcibly remove him from the vehicle. Even then, Cassel attempted to flee on foot. *See Cleveland v. Weems*, 8th Dist. Cuyahoga No. 82752, 2004-Ohio-476, ¶ 23 ("[t]he officers * * * testified that the actions of the appellant escalated the situation and caused them to draw their weapons to control the situation").

{¶37} The third assignment of error is without merit.

{¶38} In the fourth and final assignment of error, Cassel argues that the trial court erred in calculating his sentence. Specifically, he "contends that the sentencing journal entry is incorrect because R.C. 2929.144 states that you cannot consider a gun specification to enhance the maximum term." Appellant's brief at 12.

11

{¶39} The statute provides in relevant part:

> Any mandatory prison term, or portion of a mandatory prison term, that is imposed or to be imposed on the offender under division (B) * * * of section 2929.14 of the Revised Code * * *, with respect to a conviction of or plea of guilty to a specification, and that is in addition to the sentence imposed for the underlying offense is separate from the sentence being imposed for the qualifying first or second degree felony committed on or after the effective date of this section and shall not be considered or included in determining a maximum prison term for the offender under divisions (B)(1) to (3) of this section.

R.C. 2929.144(B)(4).

{¶40} We agree with the State that Cassel misinterprets this division of the statute as somehow preventing the imposition of a consecutive sentence for the firearm specification in addition to the indefinite sentence for Trafficking in Heroin. Cassel's indefinite sentence for Trafficking was determined in accordance with division (B)(1) whereby "the maximum prison term shall be equal to the minimum prison term imposed * * * plus fifty per cent of that term." R.C. 2929.144(B)(1). The trial court imposed a stated minimum term of four years which results in a maximum prison term of six years without the prison term for the firearm specification being considered or included. Otherwise, the maximum prison term would be seven and a half years (based on a minimum term of four years plus one for the specification). This does not, however, preclude the prison term for the specification being served, in the words of the statute, "in addition to the sentence imposed for the underlying offense." The six-year maximum prison term only applies to the sentence for the underlying offense.

{¶41} This is the way the statute has been applied in other cases where the courts have applied R.C. 2929.144(B)(4) in a manner consistent with R.C. 2929.14(C)(1)(a) ("if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's

12

control while committing a felony * * * the offender shall serve any mandatory prison term imposed * * * consecutively to and prior to any prison term imposed for the underlying felony").  *See State v. Miles*, 11th Dist. Portage No. 2020-P-0032, 2020-Ohio-6921, ¶ 28 (six-year sentences for firearm specifications to be served prior to and consecutively to the sentences for the underlying offenses which carry a maximum prison term of nineteen years for an aggregate maximum sentence of twenty-five years); *State v. Ramey*, 4th Dist. Washington Nos. 20CA1 and 20CA2, 2020-Ohio-6733, ¶ 7 (the same).

{¶42}  The fourth assignment of error is without merit.

{¶43}  For the foregoing reasons, the denial of Cassel's Motion to Suppress and his Sentence are affirmed.  Costs to be taxed against the appellant.


MARY JANE TRAPP, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

13